UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MARIE MACKEY,
    Plaintiff,

v.                                      C.A. No. 18-014-JJM-LDA

ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY,
    Defendant.

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., Chief United States District Judge.

Before the Court is Defendant Allstate Property and Casualty Insurance Company's ("Allstate") Motion for Summary Judgment. ECF No. 24. In its motion, Allstate argues that Plaintiff Marie Mackey is not covered for the fire that destroyed her family home because her brother, Michael Fargnoli who lived alone in the property, caused the fire. There are two issues in this case on summary judgment: whether Mr. Fargnoli was an "insured person" under the Policy and if so 2) whether the fire is excluded from coverage because Mr. Fargnoli caused it. The Court will also address Allstate's Motion to Strike Ms. Mackey's expert's report. ECF No. 27.

## I. BACKGROUND

Michael Fargnoli lived in the house at 89 Belmont Street in Providence, Rhode Island with his father, Italo Fargnoli who owned the house. Italo insured the property with Allstate. Michael took care of Italo in the home until he died. Ms. Mackey, who was to inherit the house from the Estate of Italo Fargnoli, allowed

her brother to continue to live there. Based on the Policy language, Ms. Mackey became an insured person because she inherited the property.

Mr. Fargnoli was home alone on December 26, 2016, filling a generator and chain saw with gasoline in the basement of the Property. He said he may have spilled gasoline on the floor. As he was in the middle of that process, he left the basement to go to an upstairs bathroom. While upstairs, Mr. Fargnoli says he heard a loud boom or explosion and soon after saw and smelled smoke and felt heat coming from the basement. He managed to escape the home, jumping out of a third-floor window. He suffered three cracked vertebrae in his back, but no burns or smoke inhalation.

Mr. Fargnoli asserts that he did not intend to set the fire. He had no motive to burn the house down; he was living in the house rent free, understood that he was not a beneficiary of his father's will, and was not entitled to any insurance proceeds from a potential loss.[1] Mr. Fargnoli was never arrested for or charged with arson; the City of Providence Arson Squad investigator Sean Reddy confirmed that if he believed that Mr. Fargnoli had intentionally set the fire, he would have arrested him.

Ms. Mackey, as devisee of the Property and an insured under the Allstate Policy, made a claim for coverage on the loss. Allstate began an investigation, engaging EFI Global, Inc. Investigators Vincent Calenda and Christopher

---

[1] According to Ms. Mackey, there was an agreement between herself, her brother, and father that Mr. Fargnoli would not inherit anything from his father because of some IRS tax obligations he had incurred decades earlier. Both Ms. Mackey and Mr. Fargnoli testified that it was up to Ms. Mackey to decide whether she would "gift" him with anything from the estate–specifically, any monies coming out of the sale of the family home.

Cummiskey and EFI Forensic Chemist, Christine Foran. Allstate ultimately denied coverage based on Mr. Calenda's "Fire Investigation Report One and Final", as well as Mr. Cummiskey's "Electrical Assessment Summary". Mr. Calenda's report said that he inspected the fire scene many times. He collected debris samples and had Ms. Foran analyze them. Ms. Foran found gasoline in the debris samples but stated that the "identification of an ignitable liquid residue in a fire scene does not necessarily lead to the conclusion that a fire was incendiary in nature. Further investigation may reveal a legitimate reason for the presence of an ignitable liquid residue." ECF No. 25-8 at 2. Nevertheless, Mr. Calenda did not determine the cause of the fire until the samples came back, then opining based on the microscopic amount of gasoline detected in the samples in the basement, that direct intentional human involvement brought the ignition and fuel together; in other words, a person intentionally lit the gasoline on fire.

Mr. Calenda testified under oath that he believed initially that there may have been multiple areas of origin and the fire moved up the walls, making its origin harder to determine. Allstate never investigated this belief further. He concluded that the origin of the fire was near the first-floor landing of a staircase. Mr. Cummiskey inspected the house once before he issued an "Electrical Assessment Summary." In this report, he ruled out electrical activity as a cause and origin of the fire. Mr. Calenda adopted this opinion.

The fire damage left the house in a dangerous condition. After Allstate denied Ms. Mackey's claim, she had no choice but to pay to demolish the family home.

Believing that coverage should not have been denied because the fire was not caused by an intentional or criminal act by an insured person, Ms. Mackey filed this lawsuit, leveling three claims against Allstate—Count I for Declaratory Judgment, Count II for Breach of Contract, and Count III for Bad Faith. Now that discovery is complete, Allstate moves for summary judgment. ECF No. 24. Allstate also moves to strike Ms. Mackey's expert disclosure. ECF No. 27.

## II.  STANDARD OF REVIEW

When making a summary judgment determination, the Court must review the entire record and consider the facts and inferences in the light most favorable to the non-moving party. *Cont'l Cas. Co. v. Canadian Univ. Ins. Co.*, 924 F.2d 370, 373 (1st Cir. 1991).

The Federal Rules of Civil Procedure govern the summary judgment process. Rule 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." A party is entitled to summary judgment only if two conditions specified in Rule 56 are met: that "no genuine dispute [exists] as to any material fact" and that the undisputed facts demonstrate that the party is "entitled to judgment as a matter of law." *See Knight v. Mills*, 836 F.2d 659, 664 (1st Cir. 1987) (undisputed material facts, together with inferences drawn against the movant, "must lead to one reasonable conclusion in favor of the movant" to justify summary judgment). A material fact is one that "might affect the outcome of the suit under the governing

4

law .... Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment is a drastic remedy, *Colman v. Faucher*, 128 F. Supp. 3d 487, 490 (D.R.I. 2015), because it deprives the parties of the opportunity to have a trier-of-fact determine the outcome as enshrined in the Seventh Amendment to the United States Constitution ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...."). This is especially true in fact-intense inquiries. Thus, the law requires the Court to draw all reasonable inferences against the moving party and that the Court grant summary judgment if the undisputed facts and inferences that flow from them allow for only one reasonable conclusion in favor of the movant. *Knight*, 836 F.2d at 664 (citing *Anderson*, 477 U.S. at 251). This Court must "tak[e] the facts in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Barraford v. T & N Ltd.*, 778 F.3d 258, 263 (1st Cir. 2015).

### III. SUMMARY JUDGMENT MOTION

Allstate asserts that Mr. Fargnoli is an "insured person" under the Policy. Because Allstate's investigation concluded that Mr. Fargnoli intentionally set the fire, an exclusion precluding coverage for intentional acts by insured persons applies so Allstate properly denied Ms. Mackey's claim and her case should be dismissed as a matter of law. In response, Ms. Mackey argues that Mr. Fargnoli, was not an "insured person" at the time of the fire. She reads the Policy to say that, for Mr. Fargnoli to be considered "insured," he would have to be living with her in the

house and her spouse and/or under twenty-one years old. Additionally, she argues that there are disputed issues of material fact as to the cause of the fire so summary judgment is not appropriate.

This discussion turns on how the Court interprets the Policy. Under Rhode Island law,[2] "when the terms of an insurance policy are found to be clear and unambiguous, judicial construction is at an end. The contract terms must be applied as written and the parties are bound by them." *Amica Mut. Ins. Co. v. Streicker*, 583 A.2d 550, 551 (R.I. 1990). In determining whether contract language is clear and unambiguous, a court should interpret "the parties' intent based solely on the written words," and give unambiguous words their "plain and natural meaning." *In re Newport Plaza Assoc.*, 985 F.2d 640, 645 (1st Cir. 1993). Contract language is ambiguous where it is "reasonably susceptible of different constructions." *Westinghouse Broadcasting Co., Inc. v. Dial Media, Inc.*, 122 R.I. 571, 410 A.2d 986, 991 (1980). When an ambiguity exists, "it will be strictly construed against the insurer." *Sentry Ins. Co. v. Grenga*, 556 A.2d 998, 999 (R.I. 1989); *see also Peloquin v. Haven Health Ctr. of Greenville, LLC*, 61 A.3d 419, 431–32 (R.I. 2013).

### A.   "INSURED PERSON"

The first question before the Court is whether Michael Fargnoli was an insured person such that his alleged intentional conduct would cause the fire loss to be

---

[2] Rhode Island law applies to this dispute because Allstate issued the Policy in Rhode Island to Italo Fargnoli, a Rhode Island resident.

6

excluded from the Policy. The Court looks to the Policy to determine whether a person is "insured." According to the Policy:

> "Insured person means you and, if a resident of your household: a) any relative; and b) any person under the age of 21 in your care."
>
> "'You' or 'your' means the policyholder . . . and: a) that person's resident spouse; or b) if a resident of the same household, a party who has entered into a domestic partnership or civil union . . . with the policyholder...".

Allstate alleges that an insured person is the policyholder, and any relative of a policyholder who is a resident of a policyholder's household.

Ms. Mackey suggests that the Policy language is ambiguous such that it should be construed in her favor. She interprets the Policy language to read that her father Italo was the "Named Insured" and that she became an "insured person" upon his death. She further reads the Policy to say that, for Mr. Fargnoli to be considered an "insured," he would have to be her spouse, not her brother, and living with her in the house and/or under twenty-one years old. In the alternative, Ms. Mackey argues that there are disputed issues on whether Mr. Fargnoli is an insured person so summary judgment should be denied.

The Court finds that the plain language of the Policy supports Allstate's interpretation. The Policy language requires the Court to consider whether Mr. Fargnoli was a resident of the household, and a relative of the policyholder (either Ms. Mackey or Italo Fargnoli). *See Allstate Ins. Co. v. Chia-I Lung*, 131 Misc. 2d 586, 587–88, 501 N.Y.S.2d 260 (N.Y. Sup. Ct. 1986). The parties do not dispute that Mr. Fargnoli was a resident of the Belmont Street home and Ms. Mackey's (and the

deceased "Named Insured" Italo's) relative. As such, the Court finds that Mr. Fargnoli is an insured person under Allstate's Policy.

## B. THE POLICY EXCLUSION

The summary judgment inquiry does not stop there. The second, more fact-intensive query in this motion is: are there disputed issues of material fact about whether, as an insured under the Policy, Mr. Fargnoli's involvement in the fire loss was excludable as a criminal act?

The exclusion Allstate invokes precludes coverage for losses "consisting of or caused by the following: . . . 8. Intentional or criminal acts of or at the direction of any insured person, if the loss that occurs: a) may be reasonably expected to result from such acts; or b) is the intended result of such acts." ECF No. 25-2 at 33. Allstate has the burden to prove the application of an exclusion. *Children's Friend & Service v. St. Paul Fire & Marine Ins. Co.*, 893 A.2d 222, 230 (R.I. 2006). Allstate noted in its denial letter that "[t]he weight of the evidence gathered to date makes it probable that the fire was not an accident, but rather was intentionally set by or at the direction of an insured person, Michael Fargnoli." ECF No. 25-9 at 2. Allstate argues that summary judgment is appropriate because "the undisputed evidence shows that a set fire took place while [Mr.] Fargnoli was home alone." ECF No. 24-1 at 6.

The Court finds from the evidence that there are disputed issues of fact about whether the fire was intentionally set. This dispute goes to Mr. Fargnoli's state of mind; he testified that he did not intentionally set the house on fire. He said he may have spilled gasoline while filling up his chainsaw and generator, which explained

the gas odor in the basement. He asserted that he had no motive to burn the house down; he was living in the house rent free and understood that he was not a beneficiary of his father's will and would not be entitled to any insurance proceeds from a potential loss. Moreover, Mr. Fargnoli was never arrested for or charged with arson. He did not suffer any burns or smoke inhalation, which would have been expected if he had ignited the gas with an open flame as Allstate suggests.

Although Allstate asserts that the fire could not have been an accident because all accidental sources were eliminated, Mr. Calenda and Mr. Cummiskey testified that the only accidental cause ruled out was electrical, not all accidental causes.[3] And Ms. Foran found gasoline in the debris samples that Mr. Calenda provided, but stated that the "identification of an ignitable liquid residue in a fire scene does not necessarily lead to the conclusion that a fire was incendiary in nature. Further investigation may reveal a legitimate reason for the presence of an ignitable liquid residue." ECF No. 25-8 at 2. Mr. Fargnoli gave a legitimate reason for the gasoline on the basement floor. Mr. Calenda did not lend credence to Ms. Foran's suggestion, but opined that direct intentional human involvement brought the ignition and fuel together. This opinion flies in the face of Mr. Fargnoli's testimony that he did not ignite any gasoline in the basement and that the fire started while he was upstairs.

---

[3] The issue of whether the fire was an accident also goes to Allstate's argument that the fire loss was not an "occurrence" and therefore not covered under the Policy language. The Court's recognition of disputed issues on the cause of the fire applies to this argument as well.

Moreover, Ms. Mackey questions Allstate's EFI experts' independence and/or bias as they all were retained by Allstate to investigate.

Ms. Mackey raises several disputes emanating from Mr. Fargnoli's testimony of what happened that day on Belmont Street. The Court agrees that there are disputed issues of material fact about the origin and cause of the fire. These disputes should be resolved by a factfinder.[4]

## IV. MOTION TO STRIKE

Allstate moves to strike Laurence Brandoli's expert disclosure. ECF No. 27. Ms. Mackey listed Mr. Brandoli in an interrogatory answer within the discovery deadline, indicating the information he reviewed and that he may testify that the exact cause of the fire was not easily determined and that he could not conclude that it was intentionally set. Expert reports were due on August 5, 2019, but Ms. Mackey did not produce Mr. Brandoli's report until December 4, 2019. So, Allstate argues that Ms. Mackey's expert disclosure is late and that is unfairly prejudicial because Allstate's experts could not review Mr. Brandoli's report before finalizing their reports and Allstate did not depose him. It also argues that Mr. Brandoli's report should be stricken because it is seriously lacking in substance and does not contain his methodology or underlying facts or data.

Ms. Mackey responds that her disclosure of Mr. Brandoli's opinions and basis in the timely interrogatory answer satisfies Rule 26(a)(2)'s requirements. She asserts

---

[4] Ms. Mackey's bad faith claim does seem to be a stretch, but the Court denies summary judgment on it as well at this time, presuming that it will be severed at trial pending the jury's determination on the breach of contract claim.

that the December 4th report was supplemental to the discovery response and did not add any new or different information than was in the interrogatory answer. Ms. Mackey finally argues that Allstate's substantive attack on the foundation of Mr. Brandoli's opinion is premature and more properly the subject of a motion under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

The Court declines to strike Mr. Brandoli's report as untimely. Ms. Mackey's interrogatory disclosure complied with Rule 26(a)(2)'s requirements within the deadline so that Allstate had notice of his opinions, rendering later production of the report harmless. As for Allstate's argument that the report does not pass muster substantively, the Court will consider that when and if it is brought before the Court. Allstate's Motion to Strike is DENIED. ECF No. 27.

V.   CONCLUSION

These are disputed issues on the cause of the fire on Belmont Street. In light of these disputes, the Court DENIES Allstate's Motion for Summary Judgment. ECF No. 24. The Court DENIES Allstate's Motion to Strike. ECF No. 27.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

May 11, 2020

11